IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| SCOTT SAMUEL MONROE | § | |
| VS. | § | CIVIL ACTION NO. 1:04cv389 |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

The above-styled action is referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.  This report contains proposed findings and conclusions of law, a recommendation for disposition, and a statement of reasons underlying the recommendation.

### I.  NATURE OF ACTION

Scott Samuel Monroe petitions for a writ of error *coram nobis* pursuant to 28 U.S.C. § 1651.  He collaterally attacks his 1988 federal conviction based upon a guilty plea.  He contends that plea was unknowing and involuntary because he was unaware of – and the court failed to ascertain that he understood – the nature of the charge.

### II.  BACKGROUND

In *United States v. Scott Monroe*, No. B-88-101-CR, petitioner entered into a plea bargain agreement, waived indictment and pleaded guilty to an information charging him with attempting to evade or defeat taxes for calendar year 1985, in violation of 26 U.S.C. § 7201.  The court accepted the plea, and petitioner was found guilty on December 9, 1988.

Before accepting the plea, the court examined petitioner as to his understanding of the consequences of pleading guilty. Petitioner stated that he had spoken with his attorney about the charge, and understood potential consequences of a conviction. Both the court and the prosecutor read the information to petitioner. Defense counsel represented to the court that he had explained the charge to the petitioner. However, the court did not explain the essential elements of the offense, or otherwise state what the government would be required to prove at a trial should petitioner plead not guilty.

During the plea proceedings, the court also received and considered an affidavit sworn and signed by petitioner approximately 3 weeks prior to entry of his guilty plea. Among other things, petitioner acknowledged:

> "On April 15, 1986, I filed my 1985 Individual Tax Return on a Form 1040. *I knowingly and willfully failed to report all of my income derived from the wholesale of used cars,* but reported my income from contract service for the Beaumont Dealers Auto Auction, Inc. *I falsely reported taxable income to the Internal Revenue Service to be $4,050 when, in fact, it should have been $59,989.*"

(Italics added.) At the plea hearing, petitioner reconfirmed that statements in his affidavit were true.

The court sentenced petitioner on the same day he was convicted. During sentencing, the court expressed concern about statements attributed to petitioner in the presentence report, <u>viz</u>., that (a) he was just a sloppy record keeper and (b) he did not think he had to pay taxes on the sale of used cars.

Prior to these proceedings, petitioner filed an amended tax return and paid his tax liability for the period in question. In apparent recognition of that fact, petitioner was sentenced to only 45 days imprisonment, 5 years probation and a $25,000 fine.

Petitioner served his brief confinement, and completed all other terms of his sentence approximately 10 years before bringing this action.

### III. GROUNDS FOR RELIEF

Petitioner avers that in February, 2004, he learned for the first time that a critical element of his offense was *intent to defeat or avoid taxes*. Petitioner states that he did not intend to defeat or evade taxes. Implicitly, petitioner argues that had he known of the intent element, or had the court inquired, the outcome would have changed either because he would have chosen to proceed to trial, or because the court would not have accepted his plea. Petitioner argues that since his plea was not knowing, the conviction based thereon cannot stand. Petitioner cites and relies on *McCarthy v. United States*, 394 U.S. 459 (1969) wherein the Supreme Court observed:

> ". . .[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."

*Id.*, at 466.

Petitioner was in the used car business. When filing his income tax return for 1985, he did not report as income profits earned from selling and trading vehicles.[1] Petitioner states he did not report this income because (a) he did not think he owed taxes on profits until he took them out of his business, and (b) he did not have any accounting experience, and therefore did not know how to calculate profits. Petitioner references his contemporaneous statements in the presentence report as corroborating lack of criminal intent. Further, petitioner points to evidence – introduced at his plea hearing – showing that prior to initiation of the criminal proceeding, he was having a

---

[1] Petitioner reported only funds he received from contract services with an automobile auction service in Beaumont, for which he had received a W-2 form.

certified public accountant calculate profits from his used car business so he could file an amended tax return.

In connection with this *coram nobis* proceeding, petitioner proffers additional evidence. The certified public accountant who prepared petitioner's amended tax return submitted an affidavit stating that in his opinion petitioner did not fail to report his income in order to evade taxes. Instead, petitioner was confused about whether he needed to pay taxes on money reinvested in his business and confused about how to actually calculate his income. Finally, a letter from an assistant district counsel for the Internal Revenue Service states that while petitioner admitted virtually every element of the offense, he always maintained that although he knowingly filed false tax returns, he had no criminal intent.

## IV. WRIT OF ERROR CORAM NOBIS

Petitions for writ of error *coram nobis* are rare. Consequently, a brief overview of their history, purpose and requirements appropriately precedes analysis.

### A. History

The writ of error *coram nobis* emerged in sixteenth century England, where it was one of two common law writs available to correct *errors of fact* not appearing on the record that would have precluded the court's judgment had the court known of the error when it rendered judgment. Thornton, *Coram Nobis et Coram Vobis*, 5 IND. L.J. 603, 606 (1930). *Coram nobis* and the writ of error *coram vobis* were available to attack both civil and criminal judgments. Each writ directed a particular law court to

examine its own judgment.² *Coram nobis*, meaning "before us," lay in the King's Bench. *Coram vobis*, meaning "before you," lay in the Court of Common Pleas. L. Yackle, *Post-Convictions Remedies* § 36, at 164 (1981 & Supp. 1989).

**B.     Purpose**

*Coram nobis* is abolished in federal civil cases. (See below.) As for judgments in criminal cases, it is a vehicle for collaterally attacking a conviction. Thus, it functions similarly to a writ of *habeas corpus*, or a motion to vacate, set aside or correct a sentence under Title 28, United States Code, Section 2255. The principal differences between *coram nobis* and these other remedies are that petitioners do not have to satisfy a custody requirement,³ and there is no statute of limitations.

**C.     American Experience**

English common law was imported into American jurisprudence during colonial times, when eleven of thirteen colonies enacted statutes adopting the English common law. Michael L. Rustad and Thomas H. Koenig, *Taming the Tort Monster: American Civil Justice as a Battleground of Social Theory*, 68 BROOK. L. REV. 1, 13 (2002). But by 1954, availability of *coram nobis* to challenge criminal convictions in federal district courts was in doubt. Circuit courts of appeal were divided.⁴ The Supreme Court declined to rule

---

² As a result, the writs differed from ordinary common law writs of error, which removed a judgment from an inferior court to a superior court for review. Thornton, *supra*, at 605.

³ *Zolicoffer v. United States Department of Justice*, 315 F.3d 538 (5th Cir. 2003) (person must be in custody to file a petition under 28 U.S.C. 2241); *Pleasant v. Texas*, 134 F.3d 1256 (5th Cir. 1998) (person must be in custody to file a petition under 28 U.S.C. 2254); *Pack v. Yusuff*, 218 F.3d 448 (5th Cir. 2000) (movant must be in custody to file a motion to vacate under 28 U.S.C. 2255).

⁴ Compare *Allen v. United States*, 162 F.2d 193 (6th Cir. 1947) (*coram nobis* available to challenge judgments on grounds of insanity at time of plea); (continued...)

on the question expressly while giving conflicting signals as to the writ's viability.[5] A 1948 amendment to Federal Rule of Civil Procedure 60(b) expressly abolishing *coram nobis*,[6] the Supreme Court's 1946 promulgation of Federal Rule of Criminal Procedure 35, allowing a district court to correct an illegal sentence at any time, and Congress's 1948 enactment of 28 U.S.C. § 2255, providing for a motion to vacate sentence "in the nature of the ancient writ of error coram nobis." all fueled the debate and added to uncertainty.

In *United States v. Morgan*, 346 U.S. 502 (1954), the Supreme Court resolved the dispute over the availability of *coram nobis*, holding that the writ exists as an independent post-conviction remedy in federal district courts.[7] The Court rejected the government's arguments that Rule 60(b) abolished *coram nobis* in criminal as well as

---

[4] (...continued)
*Roberts v. United States*, 158 F.2d 150 (4th Cir. 1946) (*coram nobis* available to challenge judgment on grounds of mental incompetence to waive counsel or plead); *Garrison v. United States*, 154 F.2d 106 (5th Cir. 1946) (*coram nobis* available to challenge judgment on grounds that material witness perjured testimony); *United States v. Steese*, 144 F.2d 439 (3rd Cir. 1944) (treating motion to declare conviction "null and void" as an application for *coram nobis* when injustice otherwise would occur) with *United States v. Kershman*, 201 F.2d 682 (7th Cir. 1953) (Federal Rule of Civil Procedure 60(b) abolished *coram nobis* as a means to challenge both civil and criminal judgments).

[5] The Supreme Court first discussed the availability of *coram nobis* in federal courts in 1914, reserving judgment on the issue. *United States v. Mayer*, 235 U.S. 55 (1914). While the Court approved of the writ by implication in *Waley v. Johnson*, 316 U.S. 101 (1942), the Court later stated that "it is difficult to conceive of a situation in a federal criminal case today where that remedy would be necessary or appropriate." *United States v. Smith*, 331 U.S. 469, 476 n.4 (1947).

[6] As amended, Rule 60(b) provided, in part, that "Writs of *coram nobis, coram vobis, audita querela*, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

[7] Attempting to remove a federal conviction, Morgan filed a petition for writ of *coram nobis* in the United States District Court for the Northern District of New York. The district court treated the petition as a motion to vacate sentence pursuant to 28 U.S.C. § 2255 and denied relief because Morgan was no longer in custody. The United States Court of Appeals for the Second Circuit reversed. *United States v. Morgan*, 202 F.2d 67 (2d Cir. 1952).

civil cases,[8] that Rule 35 rendered it unnecessary[9] and that Section 2255 replaced *coram nobis* with an exclusive statutory remedy.[10] The Court held *coram nobis* was available to challenge criminal judgments under 28 U.S.C. § 1651, the all writs section of the Judicial Code. Commenting on the decision in *Morgan*, the United States Court of Appeals for the Seventh Circuit stated:

> "[T]he ancient writ of error coram nobis rose phoenix-like from the ashes of American jurisprudence through the benign intervention of the Supreme Court ..."

*United States v. Balistrieri*, 606 F.2d 216, 219 (7th Cir. 1979).

While *existence* of the remedy is now settled, the *extent* of the remedy remains cloudy. The writ was limited under English common law to correcting *fact* errors. See *Morgan*, 346 U.S. at 507; *Hawkins v. United States*, 324 F. Supp. 223, 224 (E.D. Tex. 1971). *Morgan* did not instruct whether the modern writ is so limited. In recent dicta, the Supreme Court suggests that the writ may be available only for correcting factual errors. In *Carlisle v. United States*, 517 U.S. 416, 428, (1996) the court stated with respect to an alternative, *coram nobis* ground for relief:

> "[The writ] would not have lain here, since it was traditionally available only to bring before the court factual errors."

---

[8] The Court, referring to a request for *coram nobis* relief, stated: "Such a motion is a step in the criminal case and not, like habeas corpus, where relief is sought in a separate case and record, the beginning of a separate civil proceeding. While at common law the writ of error *coram nobis* was issued out of chancery like other writs, the procedure by motion in the case is now the accepted American practice. As it is such a step, we do not think that Rule 60(b), expressly abolishing the writ of error *coram nobis* in civil cases, applies." *Morgan* at 505 n.4.

[9] Rule 35 did not render *coram nobis* unnecessary because the rule only applied to illegal sentences in the sense of sentences that the judgment of conviction did not authorize. *Morgan* at 506.

[10] The government asserted that Section 2255 codified the remedy in the nature of *coram nobis* and limited it to situations where the petitioner was still in custody. The Court disagreed, stating that as Congress enacted Section 2255 to meet difficulties associated with the administration of habeas corpus, the statute did not occupy the field of remedies in the nature of *coram nobis*. *Morgan* at 510-11.

Predictably, lower courts are split.  Some adopt the traditional view, and limit application of the writ to correction of fact errors.  See, e.g., *United States v. Johnson, 237 F.3d 751, 755 (6th Cir. 2001); United States v. Carpenter*, 24 Fed. Appx. 899, 904-905 (10th Cir. 2001).  But other lower courts blur or disregard the distinction entirely, and apply the writ to legal errors as well.  See, e.g., *United States v. McCord*, 509 F.2d 334 (D.C. Cir. 1974); *United States v. Bonansinga*,  855 F.2d 476, 478 (7th Cir. 1988); *United States v. Wickham*, 474 F.Supp. 113, 116 (C.D. Cal. 1979).

For present purposes, this debate is academic.  In *United States v. Marcello*, 876 F.2d. 1147 (5th Cir. 1989), and in *United States v. Bruno*, 903 F.2d 1990), the governing court of appeals allowed *coram nobis* relief in cases alleging errors of law.[11]  Hence, this court may examine the present petition – which raises a purely legal error – on its merits.

## D.  Requirements for Issuing the Writ

The writ of error *coram nobis* is an extraordinary remedy.  *United States v. Hatten*, 167 F.3d 884, 887 n.6 (5th Cir. 1999).  To be entitled to relief, the petitioner must "demonstrate that he is suffering from civil disabilities as a consequence of the criminal convictions and the challenged error is of sufficient magnitude to justify extraordinary relief." *United States v. Castro*, 26 F.3d 557, 559 (5th Cir. 1994) (quoting *United States v. Marcello*, 876 F.2d 1147, 1154 (5th Cir. 1989)).  The writ will issue only when there is no other available remedy and sound reasons exist for failure to seek appropriate earlier relief.  *Morgan*, 346 U.S. at 512.  In order for the challenged error to be of

---

[11] In *Bruno*, the court held the jury was improperly instructed that it could convict based upon a theory that an intervening Supreme Court decision held to be invalid.  In *Marcello*, the court held that as a result of an intervening Supreme Court decision, the indictment did not allege a crime.

sufficient magnitude, the error must have resulted in a complete miscarriage of justice. *Castro*, 26 F.3d at 559.

### V.  Discussion And Analysis

Since petitioner is no longer in custody, and has completed all other requirements of his sentence, he has no other available remedy. To warrant *coram nobis* relief, he must satisfy the remaining three prerequisites. First, he must show continuing *civil disabilities* as a consequence of his 1988 conviction. Second, he must show that he exercised *reasonable diligence* in seeking relief. Third, he must show that unless relief is granted, there will be a *complete miscarriage of justice*. As the ensuing discussion illustrates, the contours of these three factors are not well-defined.

### A.  Civil Disabilities

Petitioner contends that he has continuing civil disabilities because he was forced to relinquish his automobile auctioneer's license as a result of his conviction. Moreover, petitioner's conviction prevented him from acquiring a pawn shop franchise because he could not obtain the necessary license. It also forced him to turn down positions on boards of directors of publicly held companies. Finally, petitioner avers that he is acquiring a retail business that will involve sale of beer and wine, but his conviction will prevent him from receiving a liquor license.

The types of civil disabilities which ordinarily flow from a felony conviction, e.g. loss of the right to *vote* and the inability to hold *occupational licenses* or bear *firearms* are sufficient to satisfy the initial element of *coram nobis* in the eyes of some courts. See, e.g., *United States v. Keane*, 852 F.2d 199, 203 (7th Cir. 1988). The Fifth Circuit, however, may impose a higher standard. In *United States v. Dyer*, 136 F.3d 417, (5th Cir. 1998), the court stated:

> "[W]e will generally not presume that the collateral consequences of a prior conviction are *sufficiently substantial* to demonstrate the 'compelling circumstances' that warrant *coram nobis* relief."

*Id.*, at 429 (italics added). To support that assertion, the court cited its earlier decisions in *Rodgers v. United States*, 451 F.2d 562, 564 (5th Cir. 1971) and *United States v. Bruno*, 903 F.2d at 396. In *Rodgers*, the court stated *per curiam* that collateral consequences almost inevitably flow from criminal convictions but "*that fact alone is not enough to justify issuance of an extraordinary writ of coram nobis.*" In *Bruno*, the court remanded the case for a determination regarding the existence of *substantial* adverse consequences.

The Fifth Circuit has not provided lower courts with guidance as to what collateral consequences are *sufficiently substantial to demonstrate a compelling circumstance*. Here, however, petitioner suffers numerous and continuing disabilities affecting occupational opportunities. The aggregate effect of these consequences may suffice, and inasmuch as the United States does not contest this point, this report assumes that petitioner makes a sufficiently substantial showing of continuing civil disabilities to satisfy the first element of his required proof.

B.   **Diligence**

In *Morgan*, the Supreme Court stated that a *coram nobis* petitioner must present "sound reasons" for "failure to seek appropriate earlier relief." *Morgan*, 346 U.S. at 512. The Fifth Circuit interprets this as a requirement for showing reasonable diligence. In *Dyer*, the court stated:

> It has long been recognized that a petitioner seeking coram nobis must exercise 'reasonable diligence' in seeking prompt relief."

*United States v. Dyer*, 136 F.3d at 427. Again, however, jurisprudence does not flesh out very well what constitutes reasonable diligence. The underlying rationale seems to

be protection against laying behind the log of an "analogous limitations period as a safe haven for prejudicing the government"[12] or, as one court put it, "sandbagging."[13]

Here, petitioner states he did not discover until 2004 that his plea of guilty was entered involuntarily and unknowingly because he was not aware until then that an intent to evade or defeat taxes was an essential element of the offense. Accepted as true, this assertion has some appeal given petitioner's lay status. However, it does not carry the day. First, a mere showing of contemporaneous realization does not satisfy the more rigorous requirement of diligence.[14] More importantly, the error alleged here is one that could have been discovered immediately after petitioner was convicted. Petitioner does not disclose how he came to understand the error only recently, and he makes no attempt to excuse his failure to seek relief earlier by direct appeal or by filing a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. In light of those omissions, and in light of petitioner's failure to proffer any reason for waiting more than 15 years before asserting this claim, one cannot rationally conclude that petitioner exercised reasonable diligence in pursuing his claim, or that he asserts sound reasons for failure to seek relief at an earlier time.

**C.     Complete Miscarriage of Justice**

Ambiguity also persists with respect to the third required element of proof. What constitutes a miscarriage of justice, much less what constitutes a *complete* miscarriage of justice is not defined clearly.

---

[12]     See *Telink v. United States*, 24 F.3d 42, 47 (9th Cir. 1994).

[13]     See *United States v. Darnell*, 716 F.2d 479, 481 n. 5 (7th Cir. 1983).

[14]     See, e.g., *United States v. Miss Smart Frocks, Inc.*, 279 F.Supp. 295, 300 (S.D.N.Y. 1968), wherein the court deemed "contemporaneous realization by the defendant" of collateral consequences of his plea as insufficient to show a gross miscarriage of justice.

      1.     <u>Definition</u>

At a minimum, the term encompasses the idea of error that would have altered the outcome of the challenged proceeding had it been known at the time. See, e.g., *United States v.* Johnson, 237 F.3d 751, 755 (6th Cir. 2001); United *States v. Carpenter*, 24 Fed. Appx. 899, 905 (10th Cir. 2001). Again, however, Fifth Circuit decisions signal a more stringent requirement than just showing reversible error. In *Jiminez v. Trominski*, 91 F.3d 767, n.6 (5th Cir. 1996), the court emphasized that the complete miscarriage of justice standard *"is more demanding than the cause and prejudice standard for relief under 28 U.S.C. §2255."*[15] And again, in *United States v. Alaniz*, 121 Fed. Appx. 566, 567 (5th Cir. 2005) the court stated:

> "Alaniz has failed to show that there was any error associated with his 1982 conviction*, let alone an error 'resulting in a complete miscarriage of justice.'"*

      2.     <u>Alleged Error</u>

          *a.*     *Elements of Offense*

Under 26 U.S.C. 7201, *"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title . . . shall be guilty of a felony . . .."* Accordingly, to establish an attempt to evade or defeat taxes in violation of 26 U.S.C. § 7201, the following elements must be proved beyond a reasonable doubt: (a) a tax deficiency; (b) an affirmative act constituting an evasion or attempted evasion of the tax and (c) willfulness. *United States v. Sallee*, 984 F.2d 643 (5th Cir. 1992). To show willfulness,

---

[15] In order to prevail on a motion to vacate, set aside or correct sentence filed pursuant to Section 2255, a movant must demonstrate "cause" for failing to raise the claim on direct appeal and "actual prejudice" resulting from the error. *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996). To demonstrate "cause" a movant must show that some object factor external to the defense prevented him from asserting the claim on direct appeal. *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992).

the government must prove that "the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). A defendant's belief that he is not liable for a tax, if held in good faith, is a defense to a finding of willfulness even if the belief is unreasonable. *Id*.

      b.     *Argument*

Petitioner states his plea of guilty was involuntary and unknowing because he did not understand that in order to be guilty of tax evasion, he had to have specific intent to evade or defeat his taxes. He states the court did not inform him of this element of the offense or ask him whether he had the required specific intent. Petitioner states the record shows his failure to file an accurate tax form was not willful, but was instead the result of either not knowing how to calculate the profits from his business or a misunderstanding of the tax laws concerning when the profits were to be reported. He states he had no intent to evade or avoid taxes. Petitioner points out that during the plea hearing, after finding petitioner guilty, the court stated it was very concerned about a statement by petitioner in the presentence report stating petitioner said he was just a sloppy record keeper and did not think he had to pay taxes on the sale of used cars. As a result, petitioner argues that had the court questioned him regarding the intent element, the court would not have accepted a guilty plea.

      c.     *Rule 11 Requirements*

Rule 11, Federal Rules of Criminal Procedure governs guilty pleas and establishes procedures courts must follow before accepting such pleas. Specifically, the court must address the defendant personally in open court to explain and ascertain

whether the defendant understands certain information, including the nature of the charge against him. Rule 11's requirement that a defendant understand the nature of the charge against him refers to the elements of the offense. *United States v. Calderon*, 243 F.3d 587, 589 (2d Cir. 2001).

On direct appeal, if it is found that a court failed to comply with Rule 11, the appellate court considers whether the error was harmless. *United States v. Cuevas-Andrade*, 232 F.3d 440, 443 (5th Cir. 2000). To determine whether an error was harmless, the court considers whether the failure to comply with Rule 11 affected the defendant's *substantial rights* such that "knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." *United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993) (*en banc*).[16]

    *d.     Application*

A recent case, *United States v. Lujano-Perez*, 274 F.3d 219 (5th Cir. 2001), is instructive. Defendants were charged with reentering the United States after being deported. They were convicted upon guilty pleas. Neither the prosecutor nor the judge explained the elements of the offense. The indictment was not read, and the judge did not ask the defendants whether they understood the charges.

In *Lujano-Perez*, the government argued that a recitation by the prosecutor of a *factual basis* for the plea rendered the court's failure to explain the *nature of the charge* harmless error. The Fifth Circuit disagreed, stating that in every prior case where it

---

[16] At one point, the law of this circuit was that if the alleged failure to comply with Rule 11 involved one of three *core concerns* (whether the plea was *coerced*, whether the defendant understood the *nature of the charge* and whether the defendant understood the *consequences* of his plea), a conclusion that a district court completely failed to address one or more of the core concerns required automatic reversal. However, in *United States v. Johnson*, *supra*, the Fifth Circuit, sitting *en banc*, held that harmless error analysis applied regardless of whether the alleged failure to comply with Rule 11 involved a core concern.

found the failure to explain the nature of the charge to be harmless, there was evidence, other than a recitation of the factual basis, indicating the defendant understood the nature of the charge. The court distinguished *Cuevas-Andrade, supra* wherein failure to explain nature of the charge was harmless because the indictment was read to the defendant; the defendant signed a written plea agreement listing the elements of the charge; and the defendant's attorney reviewed the charge with him. The court also distinguished *United States v. Smith*, 184 F.3d 415 (5th Cir. 1999) wherein failure to explain nature of the charge was harmless because the indictment was read to the defendant; her attorney stated he reviewed the indictment and charges with the defendant; and the defendant stated that she understood them and voluntarily pleaded guilty. The court further distinguished *United States v. Reyna*, 130 F.3d 104 (5th Cir. 1997) wherein failure to explain nature of the charges was harmless because the indictment was read to the defendant; the defendant stated he understood the charges; and the court asked the defendant several questions about his understanding of the charges. Finally, the court distinguished *United States v. Guichard*, 779 F.2d 1139 (5th Cir. 1986) which held that failure to explain nature of charge was harmless because the indictment was read to the defendant; the defendant stated he had discussed the charge with his attorney; and the court inquired about the defendant's understanding of the charge.

From *Lujano-Perez*, and the cases cited and discussed therein, one may conclude that a court's failure to explain elements of the offense, or to advise a defendant of what the government must prove at trial is harmless error when there is evidence, other than a recitation of the factual basis for the charge, indicating the defendant understood the nature of the charge. Here, such evidence exists. During the hearing at which petitioner entered his plea of guilty, the court, in describing the allegations contained in the information, told petitioner he was charged with:

> "knowingly and willfully attempting to evade or defeat taxes as provided in the Internal Revenue Code by falsely filing a 1040, stating that you signed it under penalties of perjury, [which reflected] a yearly taxable income of $4,050, when in fact, your true taxable income for the calendar year was $59,989, all of which is in violation of Title 26, United States Code, Section 7201."

The prosecutor also read the charge. Defense counsel represented to the court that he had explained the charge to the petitioner. There was a written plea agreement. Finally, the petitioner stated that he had spoken with his attorney about the charge, and understood potential consequences of a conviction.

Based on the foregoing, if petitioner had made his argument on direct appeal, the court likely would have concluded that the trial court's failure to explain the nature of the charge was harmless error. The court's comments at sentencing did not necessarily reflect concern that petitioner may have had a good-faith belief that he did not have to pay taxes on the income from his used car business and was therefore not guilty. As the court's statement ("*It is almost inconceivable to me how you thought that you could trade cars, buy them, sell them, and not owe the government some money*,") was made during the sentencing portion of the hearing, the court may have been expressing skepticism about whether petitioner's statements to the probation officer were truthful.

Petitioner does not meet the initial prong of the miscarriage of justice element, i.e., showing error that would have produced a different result had it been known at the time. But assuming *arguendo* that he does, he must do more. He must also show his conviction constitutes a complete miscarriage of justice. During the plea hearing, the court received into evidence petitioner's affidavit containing statements that:

> "*I knowingly and willfully failed to report all of my income derived from the wholesale of used cars. . ..*"

and

> *"I falsely reported taxable income to the Internal Revenue Service to be $4,050 when, in fact, it should have been $59,989."*

One can hardly conceive of how a layman might express willful intent to evade or defeat taxes more directly and unambiguously. In light of these statements, and being mindful of the additional evidence indicating petitioner understood the nature of the charge, one cannot conclude that the conviction attacked here constituted a complete miscarriage of justice.

## VI. Recommendation

This petition for writ of *coram nobis* should be denied.

## VII. Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(b) and 72(b).

A party's failure to file objections bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Serv. Auto. Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

SIGNED this 31st day of August, 2005.

*Earl S. Hines*
_____
Earl S. Hines
United States Magistrate Judge